IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| TODD RIKHARD BECKER, ) | Case No. 16-02516-TOM-7 |
| ) | |
| Debtor. ) | |

## MEMORANDUM OPINION AND ORDER

This case came before the Court on January 10, 2017, for trial[1] on the Motion of Creditor Red Mountain Restaurant Group, LLC (I) for Leave to File a Nondischargeability Complaint Under 11 U.S.C. § 523(C) and 727(a)(4)(A); (II) Extending the Time Under Bankruptcy Rules 4007 and 9006 for Filing a Nondischargeability Complaint, and (III) to Delay Entry of Discharge Order Pending Determination of the Foregoing (the "Motion") filed by Red Mountain Restaurant Group, LLC ("Red Mountain" or "Movant"). Appearing before the Court were Cathleen C. Moore, attorney for Red Mountain; Matthew A. Dunaway, attorney for the Debtor; Ted Stuckenschneider, on behalf of the Debtor;[2] Sam Drummond and Clete Walker, members of Red Mountain; and Todd Rikhard Becker, the Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[3] This is a core proceeding arising under Title 11 of the

---

[1] Based on no written objections having been filed and no verbal objections having been voiced at any hearings in this adversary proceeding, all parties and their counsel have implied their consent and thus will be deemed to have consented to entry by the Bankruptcy Court of any and all final orders and judgments in this adversary proceeding.
[2] Mr. Stuckenschneider indicated that he had been asked to assist the Debtor at trial. He had received no compensation from the Debtor but had been paid by the Debtor's wife and her father.
[3] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[4] This Court has considered the pleadings, arguments of counsel, the testimony of witnesses, the exhibits, and the law, and finds and concludes as follows:[5]

## **FINDINGS OF FACTS**[6]

The Debtor filed his bankruptcy petition on June 21, 2016. Red Mountain, owner of La Paz restaurant and a creditor of the Debtor, was included on Schedule E/F filed with the Debtor's petition. A Notice of Chapter 7 Bankruptcy Case giving notice of the Debtor's bankruptcy filing, as well as the July 25, 2016 date set for the Meeting of Creditors and the September 23, 2016 deadline to object to the Debtor's discharge or to contest the dischargeability of a debt, was sent by the Bankruptcy Noticing Center to Red Mountain via first class mail at the address provided on Schedule E/F on June 23, 2016. *See* Doc. No. 8. Sam Drummond, a member of Red Mountain who has served as its contract accountant for approximately three years, testified that Red Mountain did not receive the notice through the mail. According to Mr. Drummond, he first learned of the Debtor's bankruptcy case around November 1, 2016, when he received in the mail the Order Granting the Debtor's Motion to Delay Discharge. He testified that he immediately scanned and emailed the Order to Clete Walker, managing member of Red Mountain, and to attorney James Childs. He further testified that later the same day Mr. Childs sent to him and Mr.

---

[4] 28 U.S.C. §157(b)(2)(A) provides as follows:
    (b)(2) Core proceedings include, but are not limited to–
      …
        (A) matters concerning the administration of the estate[.]

[5] This Memorandum Opinion constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[6] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

Walker via email both the Notice of Chapter 7 Bankruptcy Case and the notice of the October 24, 2016 hearing on the Debtor's Motion to Delay Discharge.

Mr. Drummond testified that Red Mountain receives mail at two locations; the first being the La Paz restaurant location, and the second being the corporate office located at 2901 Second Avenue South, Suite 130, Birmingham, Alabama 35233, the street address identified for Red Mountain on the Debtor's schedules. Most of Red Mountain's mail, such as vendor invoices, go to La Paz, while only "corporate, executive-type mail" such as IRS notices and bank note bills go to the corporate office location. According to Mr. Drummond, Red Mountain is located in the Market Biscuit building, which houses a total of approximately 8-10 tenants. He explained that the building's mailboxes, which are locked, are located in a back hallway. Four or five mailboxes are on top of each other on each side of the hallway. The mail carrier opens a panel on the bank of mailboxes, sorts the mail, and closes the panel. Mr. Drummond testified that he, as the only person with a key to Red Mountain's box, checks the box on weekdays sometime between 3:00 and 4:00 p.m. According to Mr. Drummond, he locks his office door every day, and one other person, Edie Steiniger, has a key to his office. She could get the mailbox key if he directed her to do so. Mr. Drummond testified that he was not away from the office from June 2016 through November 2016 and thus checked the mail every day. He also testified that even when he is away for illness or vacation the mail collects in the mailbox until he returns, as is what happened when he took vacation days around the Christmas holiday. Mr. Drummond stated that gets every piece of mail, sorts and opens it, and processes it as needed. He explained that he is the only person who checks the mail because, as Red Mountain's controller, he is the one who needs most of the mail.[7] Mr. Drummond testified Red Mountain does not often receive legal pleadings or mail from the

---

[7] Mr. Drummond testified that he is also the controller for software development company AQ2 Technologies that also receives its mail at the same box as Red Mountain.

Bankruptcy Court, so that type of mail would stand out to him. According to Mr. Drummond, mail has been "misdirected" two or three times per year; for example, he has received invoices indicating that a bill is past due but he never received the original invoice. He estimated that on three occasions other tenants have received mail of his and returned it. Furthermore, he gets mail belonging to other tenants around four to five times per month.

Clete Walker testified that Red Mountain had been formed in 2008 to acquire La Paz restaurant. He indicated that the Debtor had been the managing member of Red Mountain and served as the accountant for the business until Mr. Walker took over around 2012 and the accounting duties were given to Mr. Drummond.[8] At that point Mr. Drummond took over receiving the corporate mail as well. According to Mr. Walker, if Red Mountain had received timely notice, someone from Red Mountain would have attended the Meeting of Creditors, and Red Mountain would have been hired counsel with regard to the dischargeability deadline right away.

As previously noted, the Debtor's original schedules listed Red Mountain at the same address Mr. Drummond gave as the corporate mailing address. According to the Certificates of Notice filed into the Court's CM/ECF system, the Notice of Chapter 7 Bankruptcy Case (Doc. 5), the Notice of Hearing on the Debtor's Motion to Delay Discharge (Doc. 11), and the Order Granting the Debtor's Motion to Delay Discharge (Doc. 13) had been sent by the Bankruptcy Noticing Center to Red Mountain at the address located on the Debtor's schedules, which both Mr. Drummond and Mr. Walker confirmed as the correct address.

---

[8] Mr. Walker indicated at some point in his testimony that the accounting was taken over from the Debtor in 2014 so it is somewhat unclear whether Mr. Walker took over in 2012 or 2014. However, the question need not be resolved because, regardless, Mr. Drummond had assumed responsibility for checking the mail by the time the Debtor filed his bankruptcy petition in June 2016.

4

## **CONCLUSIONS OF LAW**

At trial, counsel for Red Mountain argued that the question before the Court is whether there is cause for leave to file a nondischargeability complaint past the deadline because Red Mountain allegedly did not receive notice of Mr. Becker's bankruptcy case. Counsel for Mr. Becker argued that the question is not whether Red Mountain actually received notice of the bankruptcy case, but whether the notice was properly mailed. Thus, before the Court can determine whether cause exists for Red Mountain to late-file a nondischargeability complaint (if such a complaint may be filed late at all), it must determine whether Red Mountain had notice of the Debtor's Chapter 7 case according to Eleventh Circuit law.

Bankruptcy Rule 2002(f) provides that notice of the time fixed for filing a complaint to determine whether a debt is dischargeable under Bankruptcy Code § 523, or a complaint objecting to a debtor's discharge under Bankruptcy Code § 727, is to be given by mail. Fed. R. Bankr. P. 2002(f)(4), (5). According to Bankruptcy Rule 9006(e), "[s]ervice . . . of notice by mail is complete on mailing." Fed. R. Bankr. P. 9006(e). There is a rebuttable presumption that an addressee received an item that was properly addressed and placed in the mail with sufficient postage. *Farris v. Walton (In re Farris)*, 356 F. App'x 198, 199-200 (11th Cir. 2010).

According to the Eleventh Circuit Court of Appeals:

> "The presumption of receipt may be rebutted . . . by producing evidence which would 'support a finding of the non-existence of the presumed fact.'" *In re Prescott*, 285 B.R. [763, 767 (Bankr. S.D. Ga. 2001)]. The mere denial of receipt, without more, is insufficient to rebut the presumption. *Id.*; *In re Hobbs*, 141 B.R. 466, 468 (Bankr.N.D.Ga.1992). But direct testimony of nonreceipt, combined with other evidence, may be sufficient to rebut the presumption. *In re Hobbs*, 141 B.R. at 468.

*Farris*, 356 F. App'x at 200. In *IHS of Brunswick, Inc. v. Towne (In re First American Health Care of Georgia, Inc.)*, the court determined that the intended recipient of a notice rebutted the

5

presumption of receipt through his testimony that his office employed the same procedures with regard to the mail for years, that there had never been an instance in which mail was received in his office but did not come to his attention, and that three pieces of ingoing or outgoing mail had recently been lost by the post office. *IHS of Brunswick, Inc. v. Towne (In re First American Health Care of Georgia, Inc.)*, Nos. 96-20188, ADV. 98-2032, 1999 WL 33590128, at *3-4 (Bankr. S.D. Ga. Aug. 25, 1999). The court held that the intended recipient did not receive sufficient notice of the claims bar date and thus the debt owed to him was not discharged in the debtor's bankruptcy case. *Id.* at *5. Not all courts agree with this approach. In *Grayhound Lines, Inc. v. Rogers (In re Eagle Bus Manufacturing, Inc.)*, the Fifth Circuit Court of Appeals concluded:

> Evidence that the notice was never mailed or that no other creditor received notice will rebut the presumption that proper notice was given. **In effect, the presumption may only be overcome by evidence that the mailing was not, in fact, accomplished.** To determine if a mailing was accomplished the courts may consider whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed, and whether a proper certificate of service was filed.

*Grayhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 735-36 (5th Cir. 1995) (internal quotations and citations omitted) (emphasis added).

The Debtor asserts that this Court should follow the Fifth Circuit's approach as set forth in *Eagle Bus Manufacturing* and conclude that the correct inquiry is whether notices were properly mailed to Red Mountain, not whether Red Mountain actually received the notices.[9] However, the Eleventh Circuit has allowed the presumption of receipt to be rebutted with evidence that the recipient did not receive a notice.

---

[9] In the case of *Bonner v. City of Prichard*, 661 F.2d 1206, the Eleventh Circuit Court of Appeals "held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit." *Farris*, 365 Fed. App'x at 199 n.3. *Eagle Bus Manufacturing* was determined in 1995 and is therefore not binding precedent in the Eleventh Circuit.

6

Case 16-02516-TOM7    Doc 44    Filed 02/14/17    Entered 02/14/17 08:56:47    Desc Main
Document      Page 6 of 12

In this case, Mr. Drummond testified that he is the only person with a key to the mailbox at which Red Mountain receives its corporate mail. He further testified that although one other person in the office could access that key, he is the only person to check the mail so if he is away the mail collects in the mailbox. Mr. Drummond indicated there have been occasions where he has received other tenants' mail, where other tenants have received his mail, and where mail has apparently gone missing altogether.

The Debtor included Red Mountain as a creditor on his bankruptcy schedules filed with his bankruptcy petition, using the address at which Red Mountain receives its corporate mail. All three notices introduced into evidence at trial had been sent not by the Debtor but by the Bankruptcy Noticing Center,[10] so there is no question of whether the Debtor addressed an envelope incorrectly, dropped an envelope on the way to the post office, or otherwise failed to properly mail the notices. Furthermore, not just one, but two notices were sent to Red Mountain prior to the one that it received around November 1, 2016. The Debtor did not amend his schedules in the interim between the first two notices and the third, and all three Certificates of Notice reflect that the notices at issue were sent to Red Mountain at the same address listed in the Debtor's schedules, which is the correct address per Mr. Drummond's testimony.

It appears to the Court that the Debtor did what was required of him by the Bankruptcy Code with regard to scheduling creditors and debts. Furthermore, as stated in a countless number of rulings in courts throughout the United States, the underlying policy of the Bankruptcy Code is to provide a "fresh start" to a debtor.

---

[10] The Bankruptcy Noticing Center ("BNC") sends out certain notices and orders via mail or email. For every notice or order sent, the BNC files a "Certificate of Notice" providing the physical address or email address of every recipient.

While it appears to the Court that Red Mountain has a standard procedure for checking the mail designed to ensure that Mr. Drummond receives all of Red Mountain's mail delivered to its mailbox, under the facts of this case, the Court concludes that Red Mountain has not sufficiently rebutted the presumption of receipt. A conclusion that the presumption of receipt was not rebutted by the particular evidence presented in this case is consistent with Eleventh Circuit law and furthers the "fresh start" policy. Furthermore, balancing the equities or comparing the relative prejudice to each party in this case, the Court must find that since this Debtor "followed the rules," did everything required, and since his schedules were complete and accurate regarding the Movant's address, the equities weigh in his favor and the potential harm to this Debtor and his fresh start by allowing the Movant to late-file a nondischargeability complaint would be greater than the harm faced by the Movant from the filing being disallowed.[11]

Red Mountain has argued that the deadline to file a complaint objecting to the Debtor's discharge or to determine the dischargeability of its debt should be extended because it did not receive notice of the bankruptcy case prior to the deadline. Bankruptcy Rules 4007(c) governs the extension of time to file a complaint to determine the dischargeability of a debt:

> (c) Time for filing complaint under § 523(c) in a chapter 7 liquidation, chapter 11 reorganization, chapter 12 family farmer's debt adjustment case, or chapter 13 individual's debt adjustment case; notice of time fixed
> Except as otherwise provided in subdivision (d), a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Fed. R. Bankr. P. 4007(c).

---

[11] The Court has read all the pleadings, and heard the substance and tone of the testimony of Red Mountain's principals, and is thus aware that Red Mountain alleges the Debtor's pre-petition conduct was wrongful. That issue is not before the Court.

8

The Eleventh Circuit Court of Appeals has determined that the deadlines "'are mandatory and do not allow the Court any discretion to grant a *late filed* motion to extend time to file a dischargeability complaint.'" *Byrd v. Alton (In re Alton)*, 837 F.2d 457, 459 (11th Cir. 1988) (quoting *In re Maher*, 51 B.R. 848, 852 (Bankr. N.D. Iowa 1985) (emphasis in original). In *Byrd v. Alton*, the creditor had not been listed on the debtor's original schedules and did not get notice from the court of the Meeting of Creditors or the complaint deadline. *Id*. at 458. The debtor thereafter sent the creditor's counsel a notice of the bankruptcy filing that did not provide the filing date or the date of the Meeting of Creditors. *Id*. The creditor learned of the complaint deadline only after it expired. *Id*. Despite that, the bankruptcy court held that because the creditor had notice of the bankruptcy filing the creditor had a duty to inquire about dates and deadlines. *Id*. at 458. The district court affirmed and the creditor appealed to the Eleventh Circuit Court of Appeals. *Id*. In affirming the decision, the Eleventh Circuit recognized there were "disturbing aspects" of the case, stating:

> Thus, debtor Alton, by his own actions, first deprived creditor Byrd of official notice at various stages of the proceedings pursuant to the Bankruptcy Code by omitting Byrd from the creditor list; and Alton then put Byrd on actual notice that a proceeding was pending by mailing the notice of the proceeding and of the stay. The actual notice deprived Byrd of making any later claim of nondischargeability of his claim on the ground of lack of knowledge.

*Id*. at 458-59. Despite the questionable actions of the debtor in *Alton*, the Eleventh Circuit nonetheless concluded that the complaint deadline should not be extended.

It was undisputed that the creditor in *Alton* had actual notice of the bankruptcy filing in time to file a complaint so the Eleventh Circuit did not have the occasion to address what effect, if any, the lack of actual knowledge could have had on the deadline. In its Motion, Red Mountain contends that the deadlines in Bankruptcy Rule 4007 "may, in appropriate circumstances, be tolled

9

based on equitable principles." *See* Doc. 39.[12] Red Mountain cites two cases, *Durham Ritz, Inc. v. Williamson (In re Williamson)*, 15 F.3d 1037 (11th Cir. 1994), and *In re Phillips*, 288 B.R. 585 (Bankr. M.D. Ga. 2002), to support its position. In *Phillips*, a creditor sought to reopen a case to file a complaint to determine dischargeability of a debt when it learned more than a year after the debtor's discharge that the debtor may have incurred the debt as a result of fraud. *Phillips*, 288 B.R. at 586-87. The court reopened the case because the creditor "made a sufficient showing . . . that an equitable tolling argument would not be frivolous." *Id.* at 593. The court did not actually determine whether or not the deadline had been tolled. In *Williamson*, the creditor, who had notice of the bankruptcy filing, argued that his complaint filed after the deadline was appropriate in part because he had not received thirty days' notice of the deadline from the court clerk. *Williamson*, 15 F.3d at 1039. The Eleventh Circuit Court of Appeals affirmed the opinion of the district court, in which that court noted "[t]he sixty day deadline applies regardless of the thirty day notice if the creditor has actual notice of a bankruptcy proceeding and sufficient time to file a dischargeability complaint" and held that "[t]he equities in this case do not justify the disregard of the time provisions in the Bankruptcy Code." *Id.* at 1039-40. The court did not address what would have happened if the creditor had not received actual notice of the bankruptcy case.

In *United Community Bank v. Harper (In re Harper)*, Judge Homer Drake identified four situations in which courts have used equitable principles to extend the deadline, including "where the creditor did not gain actual knowledge of the bankruptcy until it was too late to act within the sixty day period prior to the extension of the deadline." *United Cmty. Bank v. Harper (In re*

---

[12] Although Red Mountain requests in its Motion "leave to file a nondischargeability complaint pursuant to 11 U.S.C. §§ 523(c) and 727(a)(4)(A)" the Motion only addresses Bankruptcy Rule 4007(c), applicable to complaints to determine dischargeability of a debt under Bankruptcy Code § 523; thus, the Court will only address that Rule. Regardless, Bankruptcy Rule 4004, applicable to complaints to deny a debtor's discharge under Bankruptcy Code § 727, contains language similar to that in Rule 4007(c) in that a court "for cause" may extend the deadline provided a motion is made prior to the expiration of the deadline.

10

*Harper)*, 489 B.R. 251, 259 (Bankr. N.D. Ga. 2013) (Drake, J.). Judge Drake cites two cases in which bankruptcy courts have held that a creditor could file a complaint past the bar date due to lack of notice. In the first, *Georgia Lottery Corp. v. Koshy (In re Koshy)*, the court denied the debtor's motion to dismiss a complaint filed past the deadline where the creditor had "less than one full day's notice" of the debtor's bankruptcy case. *Georgia Lottery Corp. v. Koshy (In re Koshy)*, BK No. 10-70547, AP No. 10-06329, 2010 WL 4226609, at *2-3 (Bankr. N.D. Ga. Sept. 27, 2010). It is not apparent from the opinion whether the debtor had scheduled the creditor. In the second case, *Strickland v. Barr (In re Barr)*, the debtor did not schedule the creditors when she filed her bankruptcy case. *Strickland v. Barr (In re Barr)*, BK No. 08-60510, AP No. 08-09017, 2009 WL 5499257, at *1 (Feb. 9, 2009). Less than one month after the bankruptcy filing date the creditors filed a state court action against the debtor. *Id*. More than two months after the state court action was filed, and approximately six days prior to the complaint deadline, the debtor filed a suggestion of bankruptcy in the state court case. *Id.* Due to a leave of absence by the creditors' attorney, the creditors did not learn of the bankruptcy until after the deadline. *Id*. The court denied the debtor's motion to dismiss the late-filed complaint since the creditors did not have sufficient time to investigate and file a complaint prior to the deadline. *Id*. at *2.

As already discussed, in this case, the Debtor included Red Mountain in his schedules as of the bankruptcy filing date. It is clear from the *Alton* case, binding upon this Court, that the Bankruptcy Rule 4007(c) deadline for filing a complaint to determine dischargeability is an inflexible deadline. There is no case in the Eleventh Circuit, of which this Court has been made aware, where a court has allowed a late-filed complaint to go forward when the debtor clearly had properly and timely scheduled the creditor. Under the facts of this case, Red Mountain is not entitled to an extension of the deadline to file a complaint against the Debtor. It is therefore

11

**ORDERED, ADJUDGED, and DECREED** that the Motion of Creditor Red Mountain Restaurant Group, LLC (I) for Leave to File a Nondischargeability Complaint Under 11 U.S.C. § 523(c) and 727(a)(4)(A); (II) Extending the Time Under Bankruptcy Rules 4007 and 9006 for Filing a Nondischargeability Complaint, and (III) to Delay Entry of Discharge Order Pending Determination of the Foregoing is **DENIED**.

Dated:  February 14, 2017 /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm